## Atkins *v.* Payne, Appellant.

*Contract—Guaranty—Receipts—Payment.*

In an action on a guaranty, it appeared that the defendants, who were contractors, purchased structural iron and steel from material men, who purchased it from the plaintiffs. The defendants guaranteed the payment. The plaintiffs, for the purpose of enabling the material men to obtain payments on account from the defendants, gave them a receipt for payments to them which included the amount of money actually received and certain acceptances not then due. *Held*, that the receipt was conclusive on the plaintiffs as an acquittance for the amount named in it, but that it did not estop them from claiming any balance due.

Argued Jan. 21, 1901. Appeal, No. 238, Jan. T., 1900, by defendants, from judgment of C. P. No. 1, Phila. Co., June T., 1897, No. 74, on verdict for plaintiffs in case of William Atkins and S. B. Briscoe, Receivers of the Pottsville Iron & Steel Company, v. George F. Payne and Charles G. Wetter, Copartners, trading as George F. Payne & Company. Before McCOLLUM, C. J., MITCHELL, FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Assumpsit on a contract of guaranty. Before BEITLER, J.
See Atkins v. Payne, 190 Pa. 5.

From the record it appeared that plaintiffs claimed to recover $2,881.22, being a balance on account of structural iron and steel sold to Barton L. Keen & Company. It appeared that defendants had a contract to erect the Physicians and Dentists' Building on Chestnut above Eighteenth street in the city of Philadelphia. They contracted with Keen & Company for the structural iron and steel. Keen & Company purchased the iron and steel from the receivers of the Pottsville Iron & Steel Company. Payne & Company guaranteed the payment. A few days after the guarantee was made Keen & Company began to supply the materials to the building, and Payne & Company made payment from time to time to Keen & Company. Payne & Company, in order to protect themselves on their guarantee after they had paid Keen & Company several thousand dollars, demanded that Keen & Company should make known to them what payments Keen & Company had made to the receivers, and requested Keen & Company to produce receipts from the receivers showing the amount of money which the receivers had received. The receivers were notified by Keen & Company that such receipts would have to be produced, and the receivers consented to this. About August 15, 1896, Keen & Company requested the payment from Payne & Company of $7,000, and produced a receipt signed by the receivers, of which the following is a copy :

" PHILADELPHIA, August 15, 1896.

" Received from B. L. Keen & Company seven thousand dollars on account of Physicians and Dentists Bldg. contract as follows : July 21, $2,500 ; July 25, $2,500 and August 11, $2000–$7000.

" WILLIAM ATKINS,
for Receivers P. I. & S. Co."

Afterwards, about September 15, 1896, Keen & Company requested a further payment of $4,000, and produced the receivers' certificate for $4,000, of which the following is a copy :

" Philadelphia, September 15, 1896.

" Received from B. L. Keen & Co., $4,000, account of Physicians and Dentists' Building contract.

" $4,000.

" WILLIAM ATKINS,
for Wm. Atkins and S. B. Briscoe, Receivers."

At the time the first receipt was presented Payne & Company paid to Keen & Company $7,000, without any stipulation as to how the money should be used. Of this amount Keen & Company paid to the plaintiffs all but $1,500. On the presentation of the second receipt Keen & Company were paid $2,500 on condition that they should pay it to the receiver. This they did.

Defendant's points were among others as follows:

5. Under the evidence in this case the plaintiffs cannot contradict or deny the validity of the receipt for $7,000.

6. Under the evidence in this case the plaintiffs cannot contradict or deny the validity of the receipt for $4,000. *Answer:* I decline to charge you in accordance with these two points, stating the proposition as a matter of law. These receipts can be explained, can be verified and can be contradicted as between the parties to them, the Pottsville Iron Company and Keen & Company. Like any other writing the parties can say: "They did not mean that," or something of that kind, but if the defendants in reliance upon these receipts were misled by them to their loss or injury, then as between them and the parties who gave the receipts, the receipts must stand just as they were written. [2]

9. If the jury believe from the evidence that the plaintiff issued a receipt of August 15, 1896, for $7,000 and the receipt of September 15, 1896, for $4,000, for the purpose of deceiving Payne & Company, the plaintiffs are estopped from denying the validity of said receipts. If the jury believe from the evidence that the plaintiffs issued their receipt dated September 15, 1896, setting forth that they had received from the defendants the sum of $4,000, and delivered the same either directly to George F. Payne & Company or to Keen & Company for the purpose of being delivered by Keen & Company for the purpose of inducing a belief in the minds of Payne & Company that the sum of $4,000 had actually been paid as set forth in said receipt, and that Payne & Company, acting on the belief that the money had been paid by Keen & Company to the plaintiffs, afterwards made payment to Keen & Company then the plaintiffs are estopped from now denying the validity of said receipt. *Answer:* The last point I decline. [3]

Verdict and judgment for plaintiff for $3,274.35. Defendants appealed.

*Errors assigned* were (1–3) above instructions, quoting them.

*Rubert Alexander*, of *Alexander & Magill*, for appellants.

*V. Gilpin Robinson*, with him *John M. Strong* for appellees.

OPINION BY MR. JUSTICE FELL, October 11, 1901:

Payne & Company, the appellant, entered into a contract to erect a building, and Keen contracted with them to furnish and set up the structural iron and steel work. Keen bought the iron and steel of the receivers of the Pottsville Iron & Steel Company, and Payne & Company guaranteed payment by him. This action was on the guarantee. The ground of defense was that the receivers, for the purpose of enabling Keen to obtain payments on account from Payne & Company, had given him receipts for payments to them which were in excess of the amount actually received, and that in reliance on their receipts Payne & Company had been misled to their injury in paying Keen. When the case was here before, it was decided that the receipts were open to explanation, but that to the extent, if any, to which the appellants had been injured by relying on them, the receivers were conclusively estopped from denying their validity. See 190 Pa. 5. At the second trial there was no dispute as to the accounts. Payne & Company had paid Keen in full, and Keen owed the receivers $2,875 on the guaranteed account. The only question was whether Payne & Company had relied on the receipts, and whether by so doing they had sustained a loss.

The first receipt which it is alleged misled them was for $7,000 dated August 15, 1896, and in it the amounts paid were specified as follows: July 21, $2,500; July 25, $2,500; August 11, $2,000. Only the first payment of $2,500 had in fact been made. On July 25 and August 11, Keen had accepted drafts at thirty days for the other amounts mentioned. On the presentation by Keen of this receipt, Payne & Company gave him $7,000, without any stipulation as to the use he should make of the money. He at once used $4,500 of it in paying the drafts, and he subsequently paid $1,000 of it to the receivers; the balance, $1,500, he used for other purposes. The second receipt was for $4,000, dated September 15, and on its

presentation Keen was paid $2,500, on condition that he should pay it to the receivers. This he did. There is no evidence of an intention on the part of the receivers to deceive Payne & Company. They treated Keen's acceptances as cash payments, and receipted for them as such. On August 15, when the first receipt was given, the work was finished, and the state of the accounts between the parties was such that if Payne & Company had applied all the money due Keen to the payment of the receivers' account against him, which they had guaranteed, they would have discharged all of the debt except $992. Because they could thus have protected themselves against a part of the loss, they claim to have been injured by reliance on the receipt for $7,000 to the extent of the difference between the present claim of the receivers, $2,881, and the amount to which their loss might have been reduced, $992.

This claim cannot. be sustained unless we give to the receipt some other effect than that of an acquittance to Payne & Company for $7,000, and this is all that it was meant to be. Their loss did not result from the fact that, relying on the receipt, they paid more than otherwise they would have been required to pay, but from their failure to secure the application of the money they paid Keen to the further reduction of the receivers' claim. If the whole amount represented by the receipt as paid, had been paid before the receipt was given, the balance due the receivers would have been the same that it was after the payment of the drafts. If before August 15, Keen had borrowed $4,500, instead of giving his acceptance for that amount, and had used the money to pay the receivers, the receipt would have disclosed the actual state of the account. And if, after he had received the payment from Payne & Company, he had used $4,500 of the money to pay the loan, the result to them would have been exactly the same. The balance due Keen before the payment of $7,000 was less than the receivers' claim, and the only means by which Payne & Company could have protected themselves against a greater loss was by withholding the whole of the balance due on his contract. It may be that if they had known that the whole of the payment to the receivers was not in money, that they would have been more cautious, and would have taken means

to secure the application of the balance due him to the guaranteed debt. But they knew from the state of the accounts that unless Keen handed the whole of this money to the receivers, the loss which was already fixed upon them would be increased. Of this they took the chance, and all that can be said in support of their present contention is that the receipt tended to give them confidence in Keen's ability to comply with the contract. As between them and the receivers, the receipt estopped the latter from ever denying that they had received $7,000, and it had no effect except as an acquittance for this amount.

The $2,500, paid when the receipt for $4,000 was presented, was turned over to the receivers by Keen, and there is no ground for complaint as to it. All the money Payne & Company parted with in reliance on it, went in relief of their obligation.

The judgment is affirmed.